UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID MOORE, an individual,

              Plaintiff,

      v.

ALL STAR AUTO RECYCLING, INC., et al.,

              Defendants.

No.  2:11-cv-00223-MCE-CKD

**ORDER**

       Plaintiff David Moore ("Plaintiff") brought the present action against his former employers for unpaid overtime and related violations under the California Labor Code, the California Business and Professions Code, and the federal Fair Labor Standards Act ("FLSA").  Plaintiff now moves for partial summary judgment against Defendants – All Star Auto Recycling, Inc. ("All Star") and its owner, Joseph Cream ("Cream").  Plaintiff argues there is no dispute that (1) he was not an exempt employee; (2) he is entitled to overtime compensation and subsequent waiting penalties for driving a truck for All Star; and (3) Defendants failed to provide him with pay records, in violation of California Labor Code section 226.  Plaintiff also seeks to have fifteen of Defendants' affirmative defenses dismissed.

///

1   Defendants counter that the facts underpinning Plaintiff's claims remain in dispute

2   and must be determined by a trier of fact.  Furthermore, Defendants contend that

3   because Plaintiff has failed to prove his claims, Plaintiff has not negated Defendants'

4   affirmative defenses, making summary judgment inappropriate.

5   As set forth below, Plaintiff's motion for partial summary judgment is DENIED in

6   part and GRANTED in part.[1]

7

8   **BACKGROUND**

9

10   Cream owns All Star, which includes a junk yard and metal recycling facility in

11   Corning, California.  In May 2005, Cream hired Plaintiff for $1,200 a week to drive a truck

12   for All Star.  Typically, Plaintiff drove a loaded truck from his home in Sacramento to

13   Schnitzer Steel in Oakland, California, or Sims in Redwood City, California.  (Cream's

14   Dep. 19:10-22:18, Apr. 23, 2012, ECF No. 26-2 at 8-10.)  When Plaintiff left Schnitzer

15   Steel, he received a sales slip or weight sheet, which indicated "in" and "out" times.  He

16   then would drive to All Star's Corning yard, re-load the truck and return to Sacramento,

17   beginning the process again the next morning.  (See Pl.'s Undisputed Facts Nos. 2-7.)

18   Plaintiff sometimes made additional runs to pick up cars from other yards or auto

19   auctions before completing his route and returning to Sacramento.  (Pl.'s Dep.

20   33:8-36:17, Apr. 23, 2012, ECF No. 26-1 at 20-22.)  According to Plaintiff, these runs

21   sometimes took as long as fourteen hours.  (Id. at 20-25.)  Plaintiff drove a truck for All

22   Star until August 2008 and received no overtime pay during any that of time (ECF

23   No. 26-2 at 7).  (See also Cream's Dep. 68:1-4, Apr. 23, 2012, ECF No. 23-2 at 13; ECF

24   No. 24-1.)

25   Plaintiff was required by law to keep daily logs of his travel time as a truck driver.

26   (See Pl.'s Undisputed Fact No. 8.)

27   _____

28   [1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

1    Plaintiff stored those logs in a "private box" in his home (ECF No. 26-1 at 58).  Plaintiff

2    claims he maintained his driver's logs each day he worked, while Defendants did not

3    keep track of his hours worked, violating California Labor Code section 1174(d) (ECF

4    No. 23 at 8).  Plaintiff argues those logs show he is entitled to unpaid overtime (ECF

5    No. 23 at 14).  Plaintiff also seeks unpaid overtime for work hours not recorded in those

6    driver's logs.  Plaintiff claims that Cream asked Plaintiff to work numerous additional

7    hours beyond what Plaintiff recorded.  To accommodate these requests, Plaintiff alleges

8    he only recorded the number of hours worked up to the allowed limit for truck drivers.

9    Plaintiff accordingly claims he worked extra hours for Cream without recording them

10    (ECF No. 26-1 at 32-35).  For the purposes of his Motion for Partial Summary Judgment,

11    Plaintiff only seeks the alleged $15,982.50 in unpaid overtime from 2007 to 2008

12    reflected in his driver's logs (ECF No. 23 at 14).

13      Defendants challenge the accuracy of those driver's logs.  First, they point out

14    Plaintiff did not produce his driver's logs, which they claim they repeatedly requested to

15    no avail, until this litigation began in 2011 (ECF No. 26 at 6-8).  Defendants maintain

16    Plaintiff never mentioned overtime pay or a reduction in work until this litigation (ECF

17    No. 26 at 16).  Defendants also point to discrepancies between the "on duty (not

18    driving)" times on the driving logs and the "in" and "out" times from the Schnitzer Steel

19    receipts Plaintiff received when dropping off loads in Oakland.[2]  Defendants argue the

20    times from the logs and receipts should correspond if the driver's logs accurately reflect

21    time Plaintiff worked (ECF No. 26 at 9).  Finally, Jeff Fletcher ("Fletcher"), who took over

22    driving Plaintiff's route for All Star, testified the route from Corning to Oakland and back

23    to Corning takes him about eight hours.  (See Fletcher's Dep. 13:20-21, Apr. 24, 2012,

24    ECF No. 26-2 at 40.)

25    ///

26

27      [2] Plaintiff argues these receipts are irrelevant because they refer to trips made in September 28, 2006, October 5, 2006, and November 9, 2006, which fall outside the period of time contested in this case. See Ex. 8 to Decl. of Jennifer Lee; (ECF No. 27 at 5).  Even though the Schnitzer Steel receipts may be time barred, to the extent they may illuminate discrepancies in Plaintiff's record keeping, they have some

28    relevance.

1    In the fall of 2008, Cream purchased a towing company in Redding that he

2 renamed All Star Towing.  Cream appointed Plaintiff as the manager of the Redding yard

3 in August 2008 (ECF No. 26-2 at 5-7).  (See Pl.'s Undisputed Fact No. 17.)  Plaintiff was

4 one of three signatories on the All Star bank account while he worked in Redding, and

5 he wrote checks to cover rent, uniforms, the Port-a-John for the yard, and one

6 employee's paycheck (ECF No. 26-1 at 50-54).  Plaintiff also towed cars for customers

7 and the police department, holding those latter vehicles at the Redding yard until the

8 police authorized their release.  Plaintiff completed the paperwork associated with those

9 police tows.  (Id. at 47-48); (see also Hammond's Dep. 60:3-4, Apr. 24, 2012, ECF

10 No. 26-2 at 35.)  Finally, when All Star drivers came to the Redding yard, Plaintiff

11 directed them as to which vehicles to pick up.  (Decl. of William Noble ¶¶ 4, 5, ECF

12 No. 26-6; Decl. of Dustin Nelson ¶¶ 4, 5, ECF No. 26-5.)

13    All Star general manager Eric Hammond ("Hammond") and Cream testified at

14 their depositions that Plaintiff ran the Redding yard.  According to Hammond, Plaintiff

15 "pretty much . . . was on his own.  He overseen (sic) himself" (ECF No. 26-2 at 34).

16 Cream stated Plaintiff was his own boss and had the power to hire and fire employees at

17 the Redding yard.  Plaintiff's son, Michael Moore, and daughter-in-law, Tiffany Moore,

18 came to work at the Redding yard during Plaintiff's tenure there.  Michael Moore worked

19 full time towing cars, while Tiffany Moore performed office work about seven hours a

20 week (ECF No. 23-2 at 14-19).  Cream testified that Plaintiff hired Michael Moore and

21 "probably" hired Tiffany Moore (ECF No. 26-2 at 16, 18-20).

22    Plaintiff saw his time in Redding somewhat differently.  He said Cream set the

23 procedures and Cream and Hammond hired Michael Moore and Tiffany Moore.  Plaintiff

24 stated his job, for all intents and purposes, was to tow vehicles and keep the Redding

25 yard in good condition (ECF No. 26-1 at 55-57, 61; ECF No. 23 at 13).  Otherwise,

26 Plaintiff described his position as "basically a desk clerk" (ECF No. 26-1 at 44).  Plaintiff

27 received no overtime pay during his tenure at the Redding yard (ECF No. 26-2 at 7).

28 ///

1    All Star fired Plaintiff in September 2009.  (Id. at 49.)  Hammond stated the

2    Redding yard was $30,000 in debt at the time and "I did not have another position for

3    him" (ECF No. 26-2 at 25).  Cream closed the Redding yard following Plaintiff's

4    departure (ECF No. 26 at 12).  On October 11, 2010, Plaintiff requested that All Star

5    provide his pay records, pursuant to California Labor Code section 226(b) (ECF

6    No. 23-10 at 4).  Defendants did not provide those records.

7    Plaintiff filed this action on January 25, 2011.  He seeks unpaid overtime wages

8    under California and federal law from both his time as a truck driver for the Corning yard

9    and as a manager of the Redding yard.  Plaintiff also filed claims for All Star's alleged

10   failure to itemize wage statements, failure to pay unpaid wages, failure to provide pay

11   records, and unlawful business practices (ECF No. 2 at 3-9).  Plaintiff now moves for

12   partial summary judgment on the following issues:

13       1.   Plaintiff was not an exempt employee while driving trucks for the Corning

14          yard.

15       2.   Plaintiff is entitled to $15,982.50 in overtime pay from Defendants for his

16          time driving trucks for the Corning yard.

17       3.   Plaintiff is entitled to thirty days wages from Defendants for their failure to

18          pay him proper wages upon termination under California Labor Code

19          section 203.

20       4.   Plaintiff was not an exempt employee while managing the Redding yard.

21       5.   Defendants failed to provide Plaintiff with an opportunity to inspect or copy

22          his pay records in accordance with California Labor Code section 226.

23       6.   Defendants' affirmative defenses should be dismissed.

24   ///

25   ///

26   ///

27   ///

28   ///

1

**STANDARD**

2

3        The Federal Rules of Civil Procedure provide for summary judgment when "the

4  pleadings, depositions, answers to interrogatories, and admissions on file, together with

5  affidavits, if any, show that there is no genuine issue as to any material fact and that the

6  moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  One of

7  the principal purposes of Rule 56[3] is to dispose of factually unsupported claims or

8  defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

9        Rule 56 also allows a court to grant summary adjudication on part of a claim or

10  defense.  <u>See</u> FED. R. CIV. P. 56(a) ("A party seeking to recover upon a claim . . . may . .

11  . move . . . for a summary judgment in the party's favor upon all or any part thereof.");

12  <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France

13  Stone Co., Inc. v. Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich.

14  1992).

15        The standard that applies to a motion for summary adjudication is the same as

16  that which applies to a motion for summary judgment.  <u>See</u> FED. R. CIV. P. 56(a), 56(c);

17  <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

18

19        Under summary judgment practice, the moving party always bears the
         initial responsibility of informing the district court of the basis for its motion,
20        and identifying those portions of 'the pleadings, depositions, answers to
         interrogatories, and admissions on file together with the affidavits, if any,'
21        which it believes demonstrate the absence of a genuine issue of material
         fact.

22  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).

23        If the moving party meets its initial responsibility, the burden then shifts to the

24  opposing party to establish that a genuine issue as to any material fact actually does

25  exist.

26

27  _____

28        [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
   otherwise noted.

1    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First

2    Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

3              In attempting to establish the existence of this factual dispute, the opposing party

4    must tender evidence of specific facts in the form of affidavits and/or admissible

5    discovery material, in support of its contention that the dispute exists.  FED. R. CIV. P.

6    56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a

7    fact that might affect the outcome of the suit under the governing law, and that the

8    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

9    for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

10   (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d

11   347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury,

12   there is a preliminary question for the judge, not whether there is literally no evidence,

13   but whether there is any upon which a jury could properly proceed to find a verdict for

14   the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

15   251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As

16   the Supreme Court explained, "[w]hen the moving party has carried its burden under

17   Rule 56(c), its opponent must do more than simply show that there is some metaphysical

18   doubt as to the material facts . . . .  Where the record taken as a whole could not lead a

19   rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

20   Matsushita, 475 U.S. at 586-87.

21             In resolving a summary judgment motion, the evidence of the opposing party is to

22   be believed, and all reasonable inferences that may be drawn from the facts placed

23   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

24   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

25   obligation to produce a factual predicate from which the inference may be drawn.

26   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

27   810 F.2d 898 (9th Cir. 1987).

28   ///

1

**ANALYSIS**

2

3

**A.  Exempt Employee Status.**

4

5        The FLSA exempts persons employed "in a bona fide executive, administrative or

6    professional capacity" from overtime requirements and allows the United States

7    Secretary of Labor to define the scope of the exemptions.  29 U.S.C. § 213(a)(1).  The

8    FLSA "explicitly permits greater employee protection under state law."  Ramirez v.

9    Yosemite Water Co., 20 Cal. 4th 785, 795 (1999) (citing 29 U.S.C. § 218(a)).  California

10   also recognizes overtime exemptions for executive, administrative, or professional

11   employees.  CAL. LAB. CODE § 515(a).  The California Labor Code empowers the state's

12   Industrial Welfare Commission ("IWC") to establish those exemptions.  Id.  Defendants

13   argue that Plaintiff meets the executive and administrative exemptions (ECF No. 26 at

14   13-17).  Plaintiff counters that he does not meet the prerequisites for either exemption

15   and moves for summary judgment on both issues (ECF No. 23 at 11-15).

16

17        **1.  Executive Exemption.**

18

19        For purposes of the FLSA, the Secretary of Labor defines an executive employee

20   as one: "(1) Compensated on a salary basis at a rate of not less than $455 per week . . .;

21   (2) Whose primary duty is management of the enterprise in which the employee is

22   employed or of a customarily recognized department or subdivision thereof; (3) Who

23   customarily and regularly directs the work of two or more other employees; and (4) Who

24   has the authority to hire or fire other employees or whose suggestions and

25   recommendations as to the hiring, firing, advancement, promotion or any other change

26   of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).

27   ///

28   ///

1       Under California law, ICW Wage Order No. 9 outlines the requirements for each

2   exemption with regard to the transportation industry, which encompasses towing and

3   truck driving.  See Which IWC Order? Classifications, Division of Labor Standards

4   Enforcement, 22 (Jan. 2003), http://www.dir.ca.gov/dlse/WhichIWCOrderClassifications.PDF.

5   California's executive exemption generally follows the FLSA and applies to any

6   employees who manage an enterprise, have the authority or influence to hire or fire

7   other employees, direct the work of at least two employees, and customarily and

8   regularly exercise "discretion and independent judgment." CAL. CODE REGS. tit. 8,

9   § 11090(A)(1).

10       To direct two or more employees, the employee must direct the equivalent of two

11   full-time employees to meet the exemption requirement.  If an employee supervises one

12   full-time employee and two half-time employees, that would equal "two or more other

13   employees" under the meaning of the exemption.  29 C.F.R. § 541.104.

14       Courts are to construe these exemptions "narrowly," Ramirez, 20 Cal. 4th at 794,

15   and the exemptions only apply to employees "plainly and [unmistakably] within their

16   terms and spirit." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002)

17   (quoting Klem v. County of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000)).  While

18   Defendants bear the burden of proving the exemption at trial, Ramirez, 20 Cal. 4th at

19   794-95, Plaintiff, as the moving party in this action, must show there is no genuine issue

20   of material fact regarding the exemption issues. FED. R. CIV. P. 56(c).  If Plaintiff meets

21   that initial responsibility, then the burden shifts back to Defendants to show a material

22   fact actually exists.  FED. R. CIV. P. 56(e).

23       While Plaintiff served as the manager of the Redding yard, he supervised his son

24   Michael Moore and daughter-in-law Tiffany Moore.  Michael Moore worked full time,

25   while Tiffany Moore worked about seven hours a week.  Plaintiff asserts that Michael

26   Moore and Tiffany Moore were the only employees he supervised.  There is no dispute

27   in the record that Michael Moore and Tiffany Moore were not the equivalent of two, full-

28   time employees.

1   With this showing, Plaintiff meets his initial responsibility under Rule 56(c) of

2   demonstrating the executive exemption does not apply.  The burden shifts to

3   Defendants.

4          To show Plaintiff supervised the equivalent of two employees, Defendants

5   submitted the declarations of Dustin Nelson ("Nelson") and William Noble ("Noble") (ECF

6   No. 26-5; ECF No. 26-6).  Nelson and Noble both drove trucks for All Star and assert

7   that Plaintiff told them which cars to pick up from the Redding yard.  Nelson said he

8   generally went to Redding once a month for pick-ups (ECF No. 26-5 at 2), while Noble

9   said he went to Redding "several times a month, up to as much as twice a week" (ECF

10  No. 26-6).  Defendants reason that since these two drivers worked full time and Plaintiff

11  directed them as to which cars to take, then Plaintiff directed the work of Michael Moore,

12  Tiffany Moore, Nelson, and Noble – the equivalent of more than two full-time employees

13  (ECF No. 26 at 21).

14         Defendants' argument fails because it misconstrues the calculation.  "Hours

15  worked by an employee cannot be credited more than once for different executives. . . .

16  [A] full-time employee who works four hours for one supervisor and four hours for a

17  different supervisor, for example, can be credited as a half-time employee for both

18  supervisors."  29 C.F.R. § 541.104(d).  Therefore, Defendants cannot count all of Nelson

19  and Noble's hours worked for All Star toward Plaintiff's executive exemption since

20  Plaintiff only directed each driver a few times a month, at most.

21         For Defendants to withstand summary judgment on this point, they have to do

22  more than raise "some metaphysical doubt."  Defendants must show a rational trier of

23  fact could find Plaintiff supervised Nelson and Noble for thirty-three hours a week.[4]

24  Matsushita, 475 U.S. at 586-87.  Defendants failed to do this.

25  ///

26

27         [4] Two full-time employees would work eighty hours a week.  Michael worked full time, and Tiffany worked about seven hours a week, meaning Plaintiff had to supervise other employees for another thirty-three hours a week to meet the eighty-hour mark – the equivalent of two full-time employees.

28

1    While the record does not indicate how long it takes to load a "4-car" truck[5] like Noble

2    and Nelson drove,  Fletcher testified that <u>unloading</u> his truck typically took about forty-

3    five minutes, including wait time, at Schnitzer Steel (ECF No. 26-2 at 39).  Plaintiff said it

4    took him fifteen minutes to prepare his truck for unloading and another fifteen minutes for

5    the loader to unload the truck (ECF No. 26-1 at 18).  It is difficult to imagine, even in a

6    week in which Noble and Nelson visited the Redding yard three times collectively, that

7    Plaintiff spent thirty-three hours directing them which twelve total cars to load.

8          In sum, it is not rational to conclude Plaintiff directed All Star's truck drivers for

9    thirty-three hours a week, which means there is no genuine issue of material fact

10   regarding Plaintiff's status under the executive exemption.  It is clear Plaintiff did not

11   supervise the equivalent of two employees.  Furthermore, Defendants did not contend

12   the executive exemption applied to Plaintiff's time as a truck driver for the Corning yard.

13   Therefore, Plaintiff's request for summary adjudication as to his failure to qualify as an

14   exempt employee under the executive exemption is GRANTED.[6]

15

16              **2.  Administrative Exemption.**

17

18         In addition to the executive exemption discussed above, the FLSA also includes

19   an administrative exemption for employees who are: "(1) Compensated on a salary or

20   fee basis at a rate of not less than $455 per week . . . ; (2) Whose primary duty is the

21   performance of office or non-manual work directly related to the management or general

22   business operations of the employer or the employer's customers; and (3) Whose

23   primary duty includes the exercise of discretion and independent judgment with respect

24   to matters of significance."  29 C.F.R. § 541.200(a).

25

26    [5] A "4-car" truck can carry four cars at a time (ECF No. 26-6 at 1).

27    [6] Plaintiff also requested this Court find the declarations of Noble and Nelson inadmissible because Defendants did not disclose either witness as required under Rule 26(a)(1) until after the close of discovery.  As noted above, Defendants' argument fails even with these declarations; therefore, this Court

28   does not need to address the issue on procedural grounds.

11

1   California law generally tracks the federal statute.  See CAL. CODE REGS. tit. 8,

2   § 11090(A)(2).

3          The dispute regarding Plaintiff's primary duties running the Redding yard are

4   readily apparent.  Plaintiff contends his primary responsibilities were maintaining the

5   yard and towing vehicles, not office or non-manual management work.  However,

6   Plaintiff acknowledges he had the responsibilities of a desk clerk, filling out paper work

7   and writing checks for rent, uniforms, a Port-a-John, and at least one employee's pay.

8   Furthermore, Plaintiff asserts Cream set the procedures for running the Redding yard.

9   However, both Cream and Hammond testified that Plaintiff ran the Redding yard with

10  little interference, set his own hours, and had the authority to hire and fire employees.

11  Hammond said "pretty much [Plaintiff] was on his own. He overseen (sic) himself."

12         On a motion for summary judgment, the evidence of the opposing party is to be

13  believed, and all reasonable inferences that may be drawn from the facts placed before

14  the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.

15  Applying that standard to Cream and Hammond's testimony and Plaintiff's own

16  admissions regarding the office work his job entailed, it is apparent summary judgment is

17  inappropriate.  A clear dispute remains on the administrative exemption issue for a trier

18  of fact to resolve.

19         Plaintiff's motion for partial summary judgment on the issue that Plaintiff was not

20  an exempt employee under the administrative exemption while managing the Redding

21  yard is DENIED.

22         Defendants did not assert that the administrative exemption applied to Plaintiff's

23  time as a truck driver for the Corning yard.  Therefore, Plaintiff's request for summary

24  adjudication as to his failure to qualify as employee under the administrative exemption

25  while driving trucks for the Corning yard is GRANTED.

26  ///

27  ///

28  ///

1          **B. Overtime Compensation for Time as Truck Driver for Corning Yard.**

2

3          Employers cannot employ an employee for a work week longer than forty hours

4    without compensating that employee at rate of at least one-and-a-half times the regular

5    rate for the excess hours worked.  29 U.S.C. § 207(a)(1).  An employer who violates

6    section 207 is liable to the employee for the unpaid overtime in addition to an equal

7    amount as liquidated damages.  29 U.S.C. § 216(b).  California law likewise protects

8    employees, CAL. LAB. CODE § 501(a), and entitles them to recover unpaid overtime in a

9    civil action.  CAL. LAB. CODE § 1194(a).

10          Plaintiff asserts he maintained daily driver's logs throughout his time as a truck

11   driver for All Star and that Defendants failed to keep records of Plaintiff's employment, as

12   required by law.  See CAL. LAB. CODE § 1174(d) (requiring employers to keep payroll

13   records of hours worked daily by employees).  Since Plaintiff testified the logs accurately

14   reflect hours he actually worked and Defendants do not have records to contradict the

15   driver's logs, Plaintiff argues there is no genuine issue of material fact with regard to the

16   unpaid overtime.  Plaintiff concludes that summary judgment is appropriate for the

17   unpaid overtime those logs reflect Plaintiff worked, which amounted to $15,982.50 (ECF

18   No. 23 at 14).

19          While Plaintiff appears to have met his initial burden under Rule 56(c) and shifted

20   the onus to Defendants, Defendants do not necessarily need their own payroll records to

21   withstand summary judgment under Rule 56(e).  Instead, Defendants demonstrate a

22   genuine issue of material fact with the following:  (1) Fletcher's testimony regarding the

23   route Plaintiff used to drive; (2) Plaintiff's admission he falsified his driver's logs; (3) the

24   Schnitzer Steel receipts; and (4) Defendants' allegations Plaintiff never made them

25   aware of his unpaid overtime hours.

26          First, Fletcher testified that he took over Plaintiff's route and continues to drive it.

27   Fletcher said that beginning and ending at the Corning yard, the route usually takes him

28   about eight hours.

1    Plaintiff said the route sometimes took him as long as fourteen hours, though that

2    included other stops after Schnitzer Steel.  Defendants argue that any additional work

3    time Plaintiff claims is false or stems from his Sacramento commute and should not

4    count toward an overtime claim.  Drawing all reasonable inferences in favor of

5    Defendants, a dispute surfaces about how many work hours the Corning-to-Oakland

6    route required.

7         Next, Plaintiff admitted that he falsified his driver's logs.  Plaintiff maintains the

8    driver's logs accurately reflect hours he worked and the falsification only happened with

9    regard to additional hours worked beyond what he noted in the logs. However,

10   Defendants use the falsification of the logs as a starting point to undermine Plaintiff's

11   credibility when it comes to the veracity of those logged hours.  Defendants build on this

12   point by noting that the times on the driving logs do not correspond with the times on the

13   receipts from Schnitzer Steel.  Defendants assert that the receipts demonstrate Plaintiff

14   falsified his logs in a manner different than what he claims.  Defendants conclude

15   Plaintiff did not omit hours from his logs but, rather, added unworked hours to support his

16   claim for unpaid overtime.

17        Defendants finally allege that Plaintiff never made them aware of the overtime he

18   worked until this litigation.  Defendants note that if an employee "fails to notify the

19   employer or deliberately prevents the employer from acquiring knowledge of the

20   overtime work, the employer's failure to pay for the overtime hours is not a violation."

21   Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981).

22   Defendants argue that is the case here.

23        Plaintiff counters that Cream was aware of the overtime hours and Cream asked

24   Plaintiff to falsify the logs in order to allow Plaintiff to work additional time.  Plaintiff

25   contends that the Schnitzer Steel receipts show work activity from 2006, not 2007 and

26   2008; therefore, they are irrelevant.[7]

27   _____

28        [7] Plaintiff is not claiming unpaid overtime from 2006 because the applicable statute of limitations
     limits his claims to after January 25, 2007 (ECF No. 23 at 6).

1  However, if this Court takes the evidence as true that the route takes Fletcher eight

2  hours; that Plaintiff falsified his 2006 records to reflect hours that he did not in fact work;

3  that Plaintiff falsified his 2007 and 2008 records, as well; and that Plaintiff never made

4  Defendants aware of his overtime claims until the present litigation, then it would be

5  rational to infer Plaintiff's driver's logs do not accurately reflect overtime Plaintiff actually

6  worked for Defendants.  Even if the logs do reflect overtime Plaintiff actually worked for

7  All Star, Defendants still have an argument under <u>Forrester</u> that Plaintiff cannot recover

8  because he failed to notify them of his unpaid overtime.

9         Defendants claim their evidence shows Plaintiff falsified his logs to reflect

10  overtime hours that he did not in fact work.  Plaintiff maintains he recorded the hours

11  contemporaneously to his work and his logs accurately reflect hours actually worked.

12  This presents a clear factual dispute for a trier of fact to resolve.  Defendants have met

13  their burden to withstand summary judgment under Rule 56(e).

14       Plaintiff's request for partial summary judgment as to his entitlement to $15,982.50 in

15  overtime for his work as a truck driver for All Star is DENIED.

16

17       **C. Thirty Days in Wages.**

18

19         Plaintiff claims that because he is entitled to wages for unpaid overtime and

20  Defendants refused to pay those wages, Plaintiff can recover thirty days in wages as a

21  waiting time penalty for non-payment under California Labor Code section 203(a).

22  However, Plaintiff's claim under section 203 depends on a showing that he has, in fact,

23  earned wages that he did not receive.  Section 203 punishes an employer for not paying

24  what is owed.  As already discussed, Plaintiff has not shown he is owed unpaid overtime

25  at this stage.

26         Therefore, Plaintiff's motion for partial summary judgment as to his entitlement to

27  thirty days' wages under California Labor Code section 203 is DENIED.

28

1

**D.  Right to Inspect Pay Records.**

2

3         Plaintiff alleges he is entitled to a penalty payment of $750 from Defendants for a

4   violation of California Labor Code section 226.  Section 226(b) gives current and former

5   employees a right to inspect or copy their employment records.  If the employer fails to

6   allow the employee to inspect her records, the employee can collect a $750 penalty from

7   the employer.  CAL. LAB. CODE §226(f).

8         On October 11, 2010, Plaintiff requested that Defendants send his employment

9   records (ECF No. 23-10 at 4).  Plaintiff claims Defendants' failure to send these records

10  entitles him to the $750 penalty.  Defendants counter that they are required to make

11  those records available, not send them to an employee.  Furthermore, Defendants cite

12  impossibility under California Labor Code section 226(c) as an affirmative defense for

13  not complying with a section 226(b) request.  Defendants argue they cannot provide

14  records from Plaintiff's time as a truck driver for All Star because Plaintiff refused to

15  submit his driver's logs.  This factual dispute makes summary judgment inappropriate.

16        Plaintiff's motion for partial summary judgment that Defendants violated section

17  226(b), entitling Plaintiff to a $750 penalty under section 226(f), is DENIED.

18

19

**E.  Defendants' Affirmative Defenses.**

20

21        Finally, Plaintiff moves to dismiss fifteen of Defendants' seventeen affirmative

22  defenses as "baseless and without any evidentiary support" (ECF No. 23 at 21).  While a

23  court must examine all the evidence in the light most favorable to the non-moving party

24  on a motion for summary judgment, Anderson, 477 U.S. at 255, Defendants still must

25  provide factual support for their affirmative defenses to withstand summary judgment.

26  See Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1090-91 (D. Del.

27  1990).  This Court will address Defendants' affirmative defenses in the order in which

28  Plaintiff challenges them (ECF No. 10 at 9-11; ECF No. 11 at 9-11).

### 1.  Failure to State a Claim; Failure to State a Claim with Sufficient Particularity.

Defendants' first and seventeenth affirmative defenses assert Plaintiff's Complaint fails to state a claim upon which relief may be granted and fails to state a claim with sufficient particularity to enable or permit Defendants to raise all appropriate defenses (ECF No. 10 at 9, 11; ECF No. 11 at 9, 11).  Plaintiff moves for summary adjudication on grounds that Defendants should have addressed these defenses in a Rule 12(b)(6) motion.  Defendants counter Plaintiff should have done the same with regard to his attempt to dismiss these defenses.

While parties can use a Rule 12(b)(6) motion to dismiss a complaint for failing to state a claim, the Rules do not require them to do so.  "[E]very defense, in law or fact, may be asserted in the responsive pleading."  5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER ET AL., FED. PRAC. & PROC. CIV. § 1347 (3d ed. 2013).  See also Radio Corp. of Am. v. Radio Station KYFM, Inc., 424 F.2d 14, 17 (10th Cir. 1970) (noting that Rule 8(c) requires a party to set forth affirmative defenses in her pleading, a Rule 12(b) motion, or tried by the express or implied consent of the parties).  Since Defendants properly raised their affirmative defenses in their answers, Plaintiff's motion for partial summary judgment on Defendants' first and seventeenth affirmative defenses is DENIED.

### 2.  Plaintiff Suffered No Damages; Plaintiff's Damages are Vague, Uncertain, and Speculative.

Next, Plaintiff moves to dismiss Defendants' second and tenth affirmative defenses – that Plaintiff suffered no damages and that those damages were vague, uncertain, and speculative.  Plaintiff claims that he has demonstrated that he worked unpaid overtime hours as a non-exempt employee.  Since Defendants do not have employment records to counter that evidence, Plaintiff concludes he has proven his damages and this Court should dismiss these two defenses (ECF No. 23 at 22).

///

1    To support his argument, Plaintiff quotes <u>Bao Yi Yang v. Shanghai Gourmet</u>, which

2    states that "where an employer's records of the hours an employee worked are

3    inaccurate, the employee carries his burden 'if he proves that he has in fact performed

4    work for which he was improperly compensated and if he produces sufficient evidence to

5    show the amount and extent of that work as a matter of just and reasonable inference.'"

6    471 F. App'x 784, 787 (9th Cir. 2012) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>,

7    328 U.S. 680, 687 (1946)).

8           Of course, <u>Bao Yi Yang</u> requires the employee prove she actually worked the

9    uncompensated hours in question.  As previously discussed, whether Plaintiff worked

10   uncompensated overtime remains a disputed issue in this case.  As such, Plaintiff's

11   motion to dismiss Defendants' damages-related affirmative defenses is DENIED.

12

13                   **3. Contributory negligence/comparative fault of Plaintiff; Any Alleged**
                          **Damages Were Caused by a Third Party; Laches; Estoppel;**
14                        **Waiver; Unclean Hands; Failure to Mitigate; Punitive Damages**
                          **Barred; Plaintiff Made Informed Decisions; Plaintiff Lacks**
15                        **Standing; Defendants' Conduct Was Privileged and Justified.**

16

17          Lastly, Plaintiff moves to dismiss the Defendants' remaining affirmative defenses

18   – except for the statute of limitations defense (ninth defense) and the exemption

19   defenses (sixteenth defense) whose merits this Court already addressed above – on the

20   basis they are "baseless and nonsensical" (ECF No. 23 at 22).  Plaintiff claims these

21   defenses lack evidentiary support and are "simply irrelevant."  <u>Id.</u>  However, Plaintiff

22   does not assert the specific failures of each defense and merely relies on the blanket

23   assertion that he has proven he worked uncompensated overtime.  Once again, Plaintiff

24   has not established he worked those uncompensated hours; therefore, his motion to

25   dismiss Defendants' third, fourth, fifth, sixth, seventh, eighth, eleventh, twelfth, thirteenth,

26   fourteenth and fifteenth affirmative defenses is DENIED.

27   ///

28   ///

1

**CONCLUSION**

2

3        Based on the foregoing, Plaintiff's motion for partial summary judgment (ECF

4  No. 23) is GRANTED in part and DENIED in part.  Plaintiff's request for summary

5  adjudication on grounds he was not an exempt employee under the executive exemption

6  while working for All Star is GRANTED.  Summary adjudication also is GRANTED as to

7  Plaintiff's claim he was not an exempt employee under the administrative exemption

8  while driving a truck for All Star's Corning yard.  Plaintiff's remaining requests for

9  summary adjudication are DENIED.

10        IT IS SO ORDERED.

11  Dated:   **February 14, 2013**

12

13

14                                    MORRISON C. ENGLAND, JR, CHIEF JUDGE

15                                    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28